IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 12, 2006

**ANTONIUS HARRIS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Gibson County**
**No. H6962     James L. Weatherford, Judge**

_____

**No. W2006-00175-CCA-R3-PC  - Filed January 4, 2007**

_____

Petitioner, Antonius Harris, appeals the dismissal of his petition for post-conviction relief which alleged that his trial counsel rendered ineffective assistance of counsel. Specifically, Petitioner contends that trial counsel's assistance was ineffective for failure to call certain witnesses at trial. Petitioner also contends that the trial court erred in failing to instruct the jury on self-defense as an affirmative defense and in imposing consecutive sentencing. After a thorough review of the record, we conclude that Petitioner has failed to show any deficiencies in his counsel's assistance or prejudice for failing to call Petitioner's suggested witnesses. Petitioner's challenges to the trial court's jury instructions and the imposition of consecutive sentencing were raised in Petitioner's direct appeal and thus have been previously determined. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Harold R. Gunn, Humboldt, Tennessee, for the appellant, Antonius Harris.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; Garry G. Brown, District Attorney General; and Elaine Gwinn Todd, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Following a jury trial, Petitioner was convicted of two counts of especially aggravated kidnapping, one count of attempted second degree murder, two counts of aggravated assault, and one count of felony reckless endangerment. The trial court sentenced Petitioner to twenty years for each of his especially aggravated kidnapping convictions, eight years for his attempted second degree

murder conviction, three years for each aggravated assault conviction, and eighteen months for his felony reckless endangerment conviction. The trial court ordered Defendant to serve his sentences in count one, especially aggravated kidnapping, count three, attempted second degree murder, and count five, aggravated assault, consecutively, and all other sentences concurrently to count one, for an effective sentence of thirty-one years. The facts surrounding Petitioner's convictions were summarized by this Court in the direct appeal as follows:

> Angela Barnett, her boyfriend Derrick Harris, a friend Darnell Thomas, her eight-year-old daughter Essence Harris, and her four-year-old son Isaiah Harris lived in a mobile home park in Humboldt, Tennessee. Angela Barnett testified that she was home alone with her son on January 7, 2000, when the defendant, Essence Harris' father, arrived at approximately 10:00 a.m. with presents for their daughter. The presents were in Wal-Mart sacks. Barnett and Thomas testified they later found a receipt in the Wal-Mart sacks for rope and duct tape purchased at 9:32 that morning.
>
> Barnett stated the defendant went out to his car and later returned. She said that after a few seconds, defendant's wife, co-defendant Claudia Harris, who was waiting in the car, also came inside. Barnett testified the defendant then pulled out a revolver. According to Barnett, the defendant indicated someone had stolen $48,000 from him, and that he heard Derrick Harris was involved in the theft. Barnett stated the defendant questioned her about Mark Cunningham, an alleged acquaintance of Barnett and Derrick Harris, whom the defendant believed was also involved in the alleged theft. Barnett said the defendant asked about Derrick Harris, and she replied he was in Trenton. Barnett testified she complied with the defendant's command that she page Derrick Harris, but that he did not return the phone call.
>
> According to Barnett, the defendant instructed her to change clothes because she was "fixing to take [him] to Trenton." Barnett stated the defendant asked her if she knew someone who could watch her son; when she replied that she did not, he and the co-defendant decided they would take the child to the defendant's mother. Barnett said the defendant followed her outside. Co-defendant Claudia Harris carried the child and put him in the back seat of the car next to the defendant, who was seated behind Barnett. Barnett testified she could not see if the defendant was still holding the gun, but she heard her son ask the defendant, "What is that?" Derrick Harris and Darnell Thomas testified they returned home with Essence Harris at about 10:00 a.m. and found the house empty.
>
> Barnett stated they drove to the home of the defendant's mother in Trenton, where the co-defendant took the child inside while the defendant and Barnett remained in the car. Barnett said the defendant still had the gun drawn and kept saying he had to find the stolen money. Barnett testified that after the co-defendant returned to the car, they drove around Trenton looking for Derrick Harris, but were unable to find him. Barnett stated the co-defendant told her they would not hurt her if she would help

them. They then returned to Barnett's home in Humboldt, where they found Derrick Harris.

Angela Barnett said the co-defendant stated, "Well, we're just gonna have to pull up there and do this" when Barnett advised them that Essence Harris was also in the house. Barnett testified she approached the house with the defendant walking behind her holding the gun; she said he threatened her if she tried anything.

Derrick Harris and Angela Barnett testified Derrick Harris opened the door after Barnett knocked; they said Barnett immediately grabbed her daughter and ran to her daughter's room. Essence Harris testified she was standing near Derrick Harris as he opened the door, and the defendant, who had a gun, grabbed Derrick Harris and pushed him against the wall. Derrick Harris stated the defendant followed Barnett into the house and sprayed him with mace. Angela Barnett said the defendant grabbed Derrick Harris and she heard them scuffling. Darnell Thomas testified he was in his room and heard tussling after Derrick Harris answered the door.

According to Derrick Harris, he fell into the bathroom and tried to shut the door, but the defendant stuck the gun barrel into the door to prevent it from closing. Darnell Thomas testified he looked out of his room and saw the defendant trying to force his way into the bathroom by banging the door with his shoulder while "aiming his gun around." Thomas stated he retreated into his room and jumped out of the window. Derrick Harris said he opened the bathroom door because the defendant threatened to shoot everybody and was "waving the gun around."

Derrick Harris testified the defendant then grabbed him by the neck, pointed the gun to his head, and threw him against the wall. Essence Harris also testified she observed the defendant grab Derrick Harris and push him against the wall. Derrick Harris stated the defendant questioned him about Mark Cunningham and said Cunningham had taken $50,000 relating to drugs. He said the defendant threatened him if he did not take the defendant to Cunningham. Derrick Harris further testified the co-defendant threatened they would shoot everyone in the house unless he complied, and they "weren't gonna leave no witnesses." He stated he initially resisted their efforts to take him out of the house, but he agreed to go outside because he feared for the safety of Barnett and her daughter if the defendant were to shoot him in the house. Barnett and Essence Harris stated the defendant escorted Derrick Harris outside at gunpoint.

Darnell Thomas testified he went to the nearby home of William Gaines to seek help. Gaines testified he went to assist Derrick Harris and saw the defendant walk down the steps behind Derrick Harris with his arm around Derrick Harris' neck and a gun pointed to his head. Derrick Harris said the defendant and co-defendant attempted to

force him into their car, and he resisted their efforts. Darnell Thomas testified he saw the defendant with a revolver trying to force Derrick Harris into the car.

Gaines testified he was speaking with the co-defendant, two feet away from her, in an effort to assess the situation when the defendant told Gaines to keep his hands off of her; Gaines said he remained where he was. Derrick Harris stated he told Gaines to grab her and "break her neck," but before Gaines could move towards her, the defendant pointed the gun at Gaines and told Gaines to step back. Derrick Harris said Gaines complied. Gaines confirmed he made no effort to grab the co-defendant.

Barnett said she took her gun, a nine millimeter, from her bedroom; went to the door; said, "Let him go;" fired her gun once; and shot the defendant. Gaines stated the shot struck the defendant in the back. Then, according to the witnesses, the defendant turned and pointed his gun at Barnett, who quickly ducked inside the house. Essence Harris testified she was standing near her mother when her mother shot the defendant.

Derrick Harris and William Gaines stated the co-defendant ran away after Barnett shot the defendant. Derrick Harris said the defendant shot him as he tried to run. Essence Harris, Angela Barnett, and Darnell Thomas also testified they saw the defendant shoot Derrick Harris.

William Gaines testified the defendant fired four shots at him, and one of the shots passed through the sweater he was wearing. Derrick Harris testified he heard the defendant fire the four shots at Gaines. Barnett and Thomas also stated they saw the defendant firing shots toward Gaines before getting in his car.

Detective Dennis Wright of the Humboldt Police Department testified the defendant was apprehended two months later in California; the defendant's mother had previously told Detective Wright the defendant was dead.

*State v. Antonius Harris*, No. W2001-02617-CCA-R3-CD, 2002 WL 31654814, at *1-3 (Tenn. Crim. App., at Jackson, Nov. 7, 2002), *perm. to appeal denied* (Tenn. Mar. 17, 2003).

On appeal, Petitioner's conviction of the aggravated assault of Derrick Harris was merged with his conviction of attempted second degree murder under double jeopardy principles. Petitioner's convictions were otherwise affirmed, including the trial court's finding that the proof did not establish that Petitioner was entitled to a self-defense instruction to the jury and the imposition of consecutive sentencing.

-4-

## II. Post-Conviction Hearing

Defendant's counsel has practiced law since 1984, with a significant portion of his practice devoted to criminal cases. Counsel testified that he filed a motion for discovery and then a motion to compel discovery, which was granted by the trial court. Counsel acknowledged that Petitioner had requested that he obtain the prior criminal and medical records of the victims, and he did not receive any information from the State concerning these requests. Counsel stated, however, that as of the day of trial, he believed that he had all of the discovery material, and no evidence was admitted at trial that counsel had not seen and reviewed.

Counsel stated that he did not have a personal recollection of requesting a reduction in bond or a change of venue. Counsel said that the amount of Petitioner's bond reflected his flight from Tennessee after the commissions of the offenses, and the fact that before Petitioner's apprehension in California, a letter was sent to the investigating officers stating that Petitioner was deceased. Counsel said that Petitioner's trial occurred approximately eighteen months after the offenses, and he did not believe that pre-trial publicity was an issue. The prospective jurors were polled as to their familiarity with the facts surrounding the case. One juror indicated that she had heard some publicity about the case, and she was excused. None of the other jurors indicated any familiarity with the case.

Counsel said that Petitioner told him prior to trial that he believed that Derrick Harris had abused his daughter, Essence Harris, prior to the offenses. Petitioner discovered this information while his daughter was visiting with Petitioner in Arizona. Petitioner asked counsel to call a physician and a social worker from Arizona to testify to that fact. Petitioner was tried on the charge of the first degree premeditated attempted murder of Mr. Harris, however, and counsel believed that the information concerning the alleged abuse would have provided both a motive for the shooting of Mr. Harris and support for a finding of premeditation.

Counsel stated that he believed that the evidence introduced at trial supported a jury charge on self-defense based on the fact that Angela Barnett fired the first shot, wounding Petitioner, and Petitioner responded by firing his own weapon. Counsel said he appealed, without success, the trial court's failure to provide such an instruction. Counsel said that he appealed the trial court's imposition of consecutive sentencing, but was also unsuccessful on this issue.

Petitioner testified that he wanted the Arizona physician and social worker to testify about the possible abuse of his daughter because he believed that the jury would have been inclined to feel sympathetic toward his conduct. Petitioner acknowledged that it was possible that such information could have strengthened the State's case on the first degree premeditated attempted murder charge.

Petitioner said that he also asked counsel to obtain Derrick Harris' medical records because he did not believe that Mr. Harris was as severely injured as his use of a wheelchair at trial indicated. Petitioner said that he wanted counsel to obtain the victim's prior convictions because he believed the information would have supported his defense of self-defense. Petitioner acknowledged that he did not know whether any of the victims had a prior criminal history.

-5-

Petitioner stated that the trial court had commented to Claudia Harris, Petitioner's wife and co-defendant, that Petitioner was "facing thirty or forty years." Petitioner acknowledged that neither he nor counsel were present when this remark was made, and the comment occurred apparently during a pre-trial hearing for the co-defendant. Petitioner insisted, however, that the comment reflected that the trial court was not impartial during sentencing, especially in the imposition of consecutive sentencing.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. T. C. A. § 40-30-110(f). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id.* at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. Failure to Call Witnesses

Petitioner argues that his counsel's assistance was ineffective because he failed to call as witnesses at trial the physician and social worker from Arizona who had examined Petitioner's daughter, Essence Harris. Petitioner submitted that these witnesses would have testified that his daughter was abused by the victim, Derek Harris. Petitioner surmised at the post-conviction hearing

that such testimony would have made the jury sympathetic toward him. In his brief, Petitioner also submits that the testimony would have supported his contention that he went to Ms. Barnett's house, not to confront Mr. Harris, but to confront Ms. Barnett.

The post-conviction court found no deficient conduct on the part of counsel in this regard. The post-conviction court found that counsel's conduct was based on a reasonable tactical decision not to raise the issue of Mr. Harris' possible abuse of Petitioner's daughter because such evidence "would have supplied the State with a motive for Petitioner's crimes and helped to prove the charge of attempted first degree murder." Based on our review of the record, we conclude that the evidence does not preponderate against the post-conviction court's finding.

Moreover, although Petitioner challenged counsel's failure to call these witnesses at trial, he did not produce either witness to testify at his post-conviction hearing. Generally, "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We may not speculate on what benefit these witnesses might have offered to Petitioner's case. *Id.* Accordingly, Petitioner has failed to demonstrate prejudice in this regard.

## V. Previously Determined Issues

In his post-conviction petition and in this appeal, Petitioner challenges the trial court's failure to instruct the jury on self-defense and the imposition of consecutive sentencing. Both issues were raised in Petitioner's direct appeal and addressed by this Court. *Antonius Harris*, 2002 WL 31654814, *9-10, 14-15. Issues which have been previously determined may not be raised through a post-conviction challenge. T.C.A. § 40-30-106(h). An issue is "previously determined when a court of competent jurisdiction has ruled on the issue's merits after a full and fair hearing." *Id.* Accordingly, Petitioner is not entitled to relief on these issues.

## CONCLUSION

After review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE